1
2
3
4
5
6
7

8                   **UNITED STATES DISTRICT COURT**

9                   **EASTERN DISTRICT OF CALIFORNIA**

10

11   RORY CHAVEZ,                          )   Case No.: 1:19-cv-0595 JLT
                                           )
12            Plaintiff,                    )   ORDER VACATING THE HEARING DATE OF
                                           )   DECEMBER 18, 2020
13       v.                                 )
                                           )   ORDER DENYING DEFENDANTS' MOTION
14   YONG KYUN WON, et al.,                 )   FOR PARTIAL SUMMARY JUDGMENT AND
                                           )   REQUEST TO DECLINE SUPPLEMENTAL
15            Defendants.                    )   JURISDICTION
                                           )   (Doc. 45)
16   _____ )

17            Rory Chavez asserts he encountered disability access barriers when visiting Havana House

18   Smoke Shop and seeks to hold Yong Kyun Wong, Young Ae Wong, and GIJ Enterprises liable for

19   violations of the Americans with Disabilities Act and Unruh Civil Rights Act. (*See* Doc. 1) Defendants

20   seek summary adjudication of Plaintiff's claim under the ADA.  In addition, Defendants contend the

21   Court should decline supplemental jurisdiction over the state law claims (Doc. 45) Plaintiff opposes

22   the motion, asserting there is no admissible evidence that Defendants' property complies with the

23   ADA, and the Court should maintain supplemental jurisdiction.  (Doc. 46)

24            The Court finds the matter suitable for decision without oral arguments, and the matter is taken

25   under submission pursuant to Local Rule 230(g).  Therefore, the hearing date of December 18, 2020 is

26   **VACATED**.  For the reasons set forth below, Defendants' motion is **DENIED**.

27   ///

28   ///

1

## I.    Background and Undisputed Facts[1]

Plaintiff "is a California resident with physical disabilities" and he "uses a wheelchair for mobility." (Doc. 1 at 1, ¶ 1; DSF 1) Plaintiff alleges that in December 2018, he visited Havana House Smoke Shop, which is located at 3221 Niles Street in Bakersfield, California. (*Id.* at 2-3, ¶¶ 5, 10)  The real property at that location is owned by Yong Kyun Wong and Young Ae Wong, and defendant GIJ Enterprises operated Havana House Smoke Shop at the time of Plaintiff's visit. (*Id.* at 2, ¶¶ 3-5; *see also* Doc. 45 at 6)

Plaintiff asserts he went to Havana House Smoke Shop "with the intention to avail himself of its goods or services and to assess the business for compliance with the disability access laws." (Doc. 1 at 3, ¶ 10)  He reports the store "is a facility open to the public, a place of public accommodation, and a business establishment." (*Id.*, ¶ 11)  Plaintiff alleges "[p]arking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store." (*Id.*, ¶ 12)  According to Plaintiff, on the date of his visit, "the defendants did not provide accessible parking in conformance with the ADA Standards." (*Id.*, ¶ 13)  In addition, Plaintiff reports that "the defendants did not provide accessible paths of travel leading to the entrance of the Store in conformance with the ADA Standards." (*Id.*, ¶ 16)  Plaintiff "personally encountered" the identified barriers, which "denied the plaintiff full and equal access" to the store. (*Id.*, ¶¶ 18-19)

At the time of the complaint was filed in May 2019, Plaintiff reported the barriers remained and Defendants did not provide accessible parking or accessible paths of travel in compliance with the ADA standards. (Doc. 1 at 3, ¶¶ 14, 17)  Plaintiff asserts he would return to Havana House Smoke

---

[1] The parties did not prepare a Joint Statement of Undisputed Facts, and Plaintiff reports that Defendants failed to properly engage in the meet and confer process. (Doc. 46 at 4) Pursuant to the Court's scheduling order, the parties were to meet and confer about issues to be raised in any motion for summary adjudication "**[a]t least 21 days before filing**" and the party seeking summary adjudication was to propose statement of undisputed **facts at least five days** before the conference." (Doc. 28 at 3-4, emphasis in original)  Further, the parties were informed: "In the notice of motion the moving party SHALL certify that the parties have met and conferred as ordered above, or set forth a statement of good cause for the failure to meet and confer. **Failure to comply may result in the motion being stricken**." (*Id.* at 4, emphasis in original) Despite this, Plaintiff reports that Defendants did not attempt to meet and confer until five days before filing the motion now pending before the Court. (Doc. 46 at 4) Defendants do not dispute this, as no reply was filed. Notably, Defendants did not file a notice of motion, and did not certify their compliance with the meet and confer requirement.  The Court does not condone these failures to comply with its orders or the Local Rules regarding the filing of a motion. **Defendants are informed that any such future failures will result in the motion being dropped from the Court's calendar**.
Nevertheless, Plaintiff has responded to the merits of the motion and Defendants' separate statement of facts. (*See* Doc. 46-1 at 1-3) To the extent the Court finds Defendants' facts are undisputed and admissible evidence supports the facts, such facts are identified as DSF.

1   Shop "to avail himself of goods or services and to determine compliance with the disability access laws

2   once it is represented to him that the Store and its facilities are accessible." (*Id.* at 4, ¶ 23)  However,

3   he was "deterred from doing so because of his knowledge of the existing barriers and his uncertainty

4   about the existence of yet other barriers on the site." (*Id.*)  Thus, Plaintiff seeks to hold Defendants

5   liable for violations of the ADA and California's Unruh Civil Rights Act.  (*See generally* Doc. 1)

6        Defendants filed their second motion for summary adjudication, which is now pending before

7   the Court, on November 3, 2020. (Doc. 45)  Defendants contend Plaintiff's request "for injunctive

8   relief must be dismissed because it is moot: all of the paint striping and signage for the accessible

9   parking spaces at the [Store] presently comply with current accessibility standards under both federal

10   and state law." (Doc. 45 at 6)  In addition, Defendants assert "the Court should decline to exercise

11   supplemental jurisdiction over Plaintiff's state law claims." (*Id.*)  Plaintiff filed his opposition to the

12   motion on December 4, 2020. (Doc. 46)  Defendants not file a reply.

13   **II.    Legal Standards for Summary Judgment**

14        The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to

15   see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,*

16   475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no

17   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

18   R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

19   judgment, when there is no genuine issue of material fact as to a particular claim or portion of that

20   claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981)

21   ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of

22   a single claim…") (internal quotation marks and citation omitted).  The standards that apply on a

23   motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ.

24   P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

25        Summary judgment, or summary adjudication, should be entered "after adequate time for

26   discovery and upon motion, against a party who fails to make a showing sufficient to establish the

27   existence of an element essential to that party's case, and on which that party will bear the burden of

28   proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial

responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

4

III.     **Evidence before the Court**

Pursuant to Rule 56(c) of the Federal Rules of the Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

A.     **Expert Opinions**

Under the Federal Rules, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. However, "an expert witness cannot give an opinion as to [a] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.... They do not testify about the law.") (citations and quotation marks omitted).

B.     **Statements of Christy Kim**

Plaintiff objects to statements made by Christy Kim in her declaration and the Certified Access Specialist Inspection Report dated October 6, 2020 ("the CASp Report").  (*See* Doc. 46-1)  The site visit was performed on September 22, 2020 by Sarah Ibrahim, EIT (Engineering-In-Training).  (Doc. 45-3 at 6; *see also* Doc. 45 at 3, Kim Decl. ¶ 5). Ms. Kim reports she is a California Access Specialist and California Registered Architect, and she "personally reviewed site inspection report conducted by Sarah Ibrahim."  (*Id.* at 3, Kim Decl. ¶¶ 1, 5).

Ms. Kim reported that based on her review, "the elements of the Facility identified in Plaintiff's Complaint are compliant under federal and state accessibility standards."  (Doc. 45-4 at 3, ¶ 7) Specifically, Ms. Kim asserts:

> Presently, the Facility has, among others, accessible parking space that contains International Symbol of Accessibility sign and Van Accessible sign with the language "Minimum Fine $250," which are mounted with the bottom edge of at least 60 inches above the ground surface. Accessible parking space provide a clear and visible International Symbol of Accessibility on the surface of the space.  Markings are provided on the access aisle to discourage parking in them. Access aisles are painted blue borderline around the perimeter and marked with hatched lines 36 inches

1        maximum on center. "NO PARKING" marking is painted on the surface of the access
aisles in white letters and 12 inch height minimum. Further, accessible path of travel is
provided from the accessible parking space leading to the entrance of the former
Havana House Smoke Shop previously located at Facility.

(Doc. 45-3 at 3-4, Kim Decl. ¶ 7)

Plaintiff objects to the statements in Paragraph 7 of Ms. Kim's declaration, asserting she offers

only legal conclusions regarding accessibility and compliance federal and state standards governing

parking and path of travel.  (Doc. 46-1 at 2-3)  Plaintiff contends the CASp Report suffers the same

infirmities because there is no information regarding the measurements taken for the path of travel.

(Doc. 46 at 7-9)

       **C.**     **Analysis**

An expert may not offer a legal conclusion or testimony on "issues of law." *Crow Tribe of

Indians*, 87 F.3d at 1045; *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994) ("When an

expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision,

but rather attempts to substitute the expert's judgment for the jury's.").  Significantly, whether there is

compliance with ADA regulations is "a legal conclusion." *See, e.g.*, *See Anderson v. Rochester-

Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 216 (2d Cir. 2003) ("ADA compliance" was a "legal

conclusion[]"); *Arroyo v. Denaco, LLC,* 2020 WL 2477682 at *2 (C.D. Cal. Mar. 20, 2020) (identifying

accessibility and "in conformance with the ADA standards" as "legal conclusions," not facts).

Courts have repeatedly stricken statements from experts regarding ADA compliance where the

expert failed to identify any factual support for the opinions.  *See, e.g., Kalani v. Starbucks Corp.*, 81

F.Supp. 3d 876, 881-84 (N.D. Cal. 2015) (excluding statements from an expert "as impermissible legal

conclusions"); *Sharp v. Islands Cal. Ariz. LP,* 900 F. Supp. 2d 1101, 1112 (S.D. Cal. 2012) (statement

that the "waiting area is accessible to wheelchair users and complies with all ADAAG requirements"

was an improper legal conclusion); *Feltenstein v. City of New Rochelle*, 254 F.Supp. 3d 647, 657

(N.Y.S.D. 2017) (finding the expert "makes legal conclusions of compliance with the ADA without

providing sufficient detail" and denying summary judgment); *see also Miller v. California Speedway

Corp.,* 453 F. Supp. 2d 1193 (C.D. Cal. 2006)*, reversed on other grounds* by 536 F.3d 1020 (9th Cir.

2008) (concluding the expert offered an impermissible conclusion of law where the expert opined that

"the subject seating does in fact comply with the applicable" laws and regulations, without identifying any factual support for that conclusion).

For example, in *Kalani*, the Northern District court excluded "several paragraphs of Defendant's expert's declaration as impermissible legal conclusions that cannot support a finding of summary judgment." *Id.*, 81 F.Supp. 3d at 884.  In *Kalani*, the expert indicated:

> A) Plaintiff's allegations in his First Amended Complaint (Court Docket No. 32-1) are without merit.
>
> B) The subject store fully complies with all federal and state access regulations as Plaintiff ROBERT KALANI alleges them and as they relate to his disability of a mobility impaired person who uses an automatic wheelchair. As of November 4, 2014, the facility is free of non-compliant issues.
>
> C) The disabled, van accessible parking spot and access aisle in front of the store complies with all applicable access requirements after the renovation. A proper accessible route is provided from this parking spot to the front door.

*Id.* at 882.  The court found no factual support for the expert's opinions, where no information was provided regarding measurements.  *Id.*  In contrast, the court noted the expert's statement that a pick-up counter … complies with access regulations," was supported where the expert also indicated the counter "now provides a length of 36 inches and a height of 34 inches."  *Id.*  Given the lack of measurements or other factual support regarding the parking spot and an accessible pathway, the court sustained the objections to the expert's statements in Paragraphs A, B, and C as "impermissible legal conclusions lacking factual support."  *Id.* at 883.  Thus, the court concluded the expert's statements were "an insufficient basis on which to grant summary judgment."  *Id.* (citing *Sharp*, 900 F. Supp. 2d at 1112).

Ms. Kim provides some observable facts: she notes that the bottom of the sign is placed 60" above the surface and that the space is painted in the symbol depicting that it is reserved for disabled drivers. She saw that there were markings to the side of the space to discourage drivers from parking in that area. She notes that she was access aisles are painted on the surface and they are "marked with hatched lines 36 inches maximum on center."  She also saw a "NO PARKING" marking painted on the surface of the access aisles in white letters that were at least 12 inches high.  None of these statements are conclusion. Where she goes awry is with her conclusion about the path of travel from the former Havana House and that the space is "accessible." Without the facts upon which Ms. Kim

concludes that the space and the path of travel are "accessible," the Court cannot evaluate the validity of her conclusions.

Failing to provide the measurements taken of the ramp or the route from the parking lot to the entrance of Havana House Smoke Shop, such that the Court could determine whether the path of travel is now in compliance with the applicable standards, Ms. Kim's declaration fails.  Furthermore, there is no information regarding how Ms. Ibrahim measured the slope, or whether the measurements were taken in compliance with the ADA Guidelines and "Dimensional Tolerances in Construction and for Surface Accessibility."  *See, e.g.*, *Langer v. Garcia*, 2019 U.S. Dist. LEXIS 65871 (C.D. Cal. Mar. 8, 2019) (finding a party erred where the inspector took measurement's and concluded the applicable slopes were 2.5 and 3% but failed to take measurements in conformity with the ADA Guidelines). Given the lack of factual support, the statements from Ms. Kim regarding accessibility and compliance for the path of travel are no more than improper legal conclusions.  *See Kalani,* 81 F.Supp.3d at 884; *Sharp*, 900 F.Supp.2d at 1112.  Plaintiff's objections to the statements found in Paragraph 7 of Ms. Kim's declaration and the CASp Report are **SUSTAINED**.

### D.    Evidence Considered by the Court

The Court, as a matter of course, has not factored into its analysis any statements identified by either party that are speculative or represent a legal conclusion. *See Burch*, 433 F. Supp.2d at 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment.") (citation omitted, emphasis in original).  Thus, the Court has relied upon only evidence it has deemed admissible.[2]  In addition, the Court will consider only those facts that are supported by admissible evidence and to which there is no genuine dispute.

### IV.    Discussion and Analysis

Defendants seek summary adjudication of Plaintiff's claim under Title III of the ADA, asserting

---

[2] For example, Defendants attached several photos as Exhibit 1 to their motion. (Doc. 30-4)  However, there is no information regarding when these photos were taken, and the photos have not been authenticated. Thus, the photographs are not deemed admissible.  In addition, Plaintiff submitted a declaration in support of his opposition to the motion, but the declaration was not signed or dated.  (*See* Doc. 37-4 at 2)

his claim for injunctive relief is moot.  (Doc. 30-1 at 7-10) In addition, Defendants argue the Court should decline to exercise jurisdiction over Plaintiff's claim for a violation of California's Unruh Civil Rights Act, seek dismissal of Plaintiff's state law claim.  (*Id.* at 10-15)

### A.    First Cause of Action: Violations of the ADA

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).  Thus, the Ninth Circuit determined:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to make out an ADA violation.  *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

### 1.    Plaintiff's prima facie case

Defendants do not argue Plaintiff fails to satisfy the elements of a Title III claim.  (*See* Doc. 30-1 at 7)  It is undisputed Plaintiff is paralyzed from his chest down and uses a wheelchair for mobility. Yong Kyun Won and Young Ae Won are the owners of the real property, and the Havana House Smoke Shop was operated by GIJ Enterprises at the time Plaintiff visited the store. (*See* Doc. 30-1 at 6; Doc. 38)  Furthermore, Havana House Smoke Shop was a place of public accommodation, as a retail store and sales establishment. *See* 42 U.S.C. § 12181(7)(E).  Finally, Defendants do not dispute Plaintiff encountered barriers that caused him to be denied access to the store, including parking that

9

1    was not accessible and greater slope than permissible in the path of travel.[3]  (*See* Doc. 30-1 at 7; Doc.

2    37 at 5)

3                    2.      Injunctive relief

4            The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited

5    discrimination and does not provide for the recovery of monetary damages by private individuals. *See*

6    42 U.S.C. § 12188(a)(2); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002).

7    Defendants contend Plaintiff's request for injunctive relief is moot, because of the barriers Plaintiff

8    encountered were removed.  (Doc. 30-1 at 8-9)

9            Defendants observe, "The law is well established that a defendant's remedial efforts will render

10   a plaintiff's ADA claim for injunctive relief moot."  (Doc. 30-1 at 8, citing, *e.g.*, *Gasper v. Marie*

11   *Callendar Pie Shops*, 2006 U.S. Dist. LEXIS 96929 at *4 (C.D. Cal. June 27, 2006))  Indeed, the

12   Supreme Court determined that a claim for injunctive is moot if "it is absolutely clear that the allegedly

13   wrongful behavior could not reasonably be expected to occur." *Friends of the Earth, Inc. v. Laidlaw*

14   *Environmental Services*, 528 U.S. 167, 190 (2000).  Thus, a claim for a violation of the ADA is

15   rendered moot where "all of plaintiff's concerns … have been addressed and corrected."  *Pickern v.*

16   *Best Western Timber Cove Lodge*, 194 F. Supp. 2d 1128, 1130 (E.D. Cal. 2002).

17           Defendants assert that the barriers encountered by Plaintiff in the parking area and his path of

18   travel to the store have been removed and corrected.  (*See* Doc. 30-1 at 9-10) However, Defendants fail

19   to present any admissible evidence demonstrating the barriers have been removed or corrective efforts

20   undertaken.  Defendants have not provided "measurements for slopes, height, depth, and length of the

21   barriers' alleged remediation."  (Doc. 37 at 6)  Without such evidence, the Court is unable to determine

22   whether the parking area and slope on the path of travel are accessible and in compliance with the

23   standards provided by the ADA Accessibility Guidelines, which "provide valuable guidance for

24   determining whether an existing facility contains architectural barriers." *Chapman v. Starbucks Corp.*,

25   2011 U.S. Dist. LEXIS 3570 at *10 (E.D. Cal. Jan. 7, 2011) (citation omitted) Because Defendants fail

26   to establish the barriers no longer exist—or that Plaintiff's request for injunctive relief is moot—the

27

28
           [3] To the contrary, Defendants concede the barriers existed, but assert they have been removed.

1    request for summary adjudication of the ADA claim is **DENIED**.

2         **B.      Second Cause of Action: Violations of the Unruh Civil Rights Act**

3         Plaintiff's second claim in his Complaint is for a violation of California's Unruh Civil Rights

4    Act, which provides "[a]ll persons within the jurisdiction of this state are free and equal, and no matter

5    what their …disability, or medical condition are entitled to the full and equal accommodations,

6    advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

7    Cal. Civ. Code § 51(b). Notably, the Unruh Act provides that "[a] violation of the right of any

8    individual under the Americans with Disabilities … shall also constitute a violation of this section."

9    Cal. Civ. Code § 51(f).

10        Defendants request that the Court "decline to exercise supplemental jurisdiction over Plaintiff's

11   state law claims" under the Unruh Act.  (Doc. 30-1 at 10, emphasis omitted) The Court may decline

12   supplemental jurisdiction over a state law claim if:

13        (1) the claim raises a novel or complex issue of State law,

14        (2) the claim substantially predominates over the claim or claims over which the district
          court has original jurisdiction,

15

16        (3) the district court has dismissed all claims over which it has original jurisdiction, or

17        (4) in exceptional circumstances, there are other compelling reasons for declining
          jurisdiction.

18   28 U.S.C. § 1367(c).

19        A court may decline to exercise supplemental jurisdiction under Section 1367(c) "under any one

20   of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th

21   Cir. 1998).  When dismissing a state-law claim pursuant to Section 1367(c)(1)-(3), the court need not

22   state its reason for dismissal. *Id.*  However, if a court declines to exercise supplemental jurisdiction

23   under Section 1367(c)(4), however, the court must "articulate why the circumstances of the case are

24   exceptional." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The

25   Ninth Circuit cautioned that declining supplemental jurisdiction based on Section 1367(c)(4) should be

26   the exception, rather than the rule. *Id.* at 1558.

27        Defendants argue "at least three of the four statutory grounds exist for this Court to decline

28   supplemental jurisdiction," including: the dismissal of Plaintiff's ADA claim, novelty and complexity

11

1  of the state law claim, and the state law claim predominating over the federal claim.  (Doc. 30-1 at 10;
2  *see also id.* at 10-15)

3        1. Dismissal of claims over which the Court has original jurisdiction

4     As an initial matter, the Court did not find Plaintiff's ADA claim is moot or dismiss the claim.
5  Consequently, this is not a ground for the Court to decline supplemental jurisdiction.

6        2. Whether the state claim predominates

7     Defendants argue Plaintiff's state-law claim for a violation of the Unruh Civil Rights Act
8  substantially predominates over the ADA claim because the remedies under the state claim exceed
9  those under the federal claim. (Doc. 30-1 at 14-15)  According to Defendants, because "Plaintiff is only
10  entitled to injunctive relief and attorneys' fees" under the ADA and seeks "$4,000 in statutory damages
11  for each offense" under the Unruh Act, "the Court should… decline to exercise supplemental
12  jurisdiction."  (*Id.* at 14-15)

13     Courts in the Ninth Circuit have rejected the argument that a claim under the Unruh Act
14  predominates over a claim under the ADA simply because of the difference in available remedies.  *See,*
15  *e.g., Moore v. Dollar Tree Stores Inc.* 85 F.Supp.3d 1175, 1194 (E.D. Cal. 2015) ("the mere fact that
16  the state claims allow for the recovery of monetary damages, whereas the ADA provides for injunctive
17  relief only, does not compel the conclusion that the state claims 'substantially predominate' over the
18  federal claim"); *Castillo-Antonio v. Hernandez,* 2019 WL 2716289 at *7 (N.D. Cal. June 28, 2019)
19  ("even though the state-law claims provide for more comprehensive remedies, they do not substantially
20  predominate over the ADA claim because the proof required for both the state and federal claims is
21  nearly identical"); *Schoors v. Seaport Vill. Operating Co., LLC*, 2017 WL 1807954 at *4 (S.D. Cal.
22  May 5, 2017) (holding that although an Unruh Act claim offered more remedies, the Unruh Act claim
23  did not substantially predominate over the ADA claim). Also, the burdens of proof for the ADA and the
24  Unruh Act are the same.  *Moore*, 85 F.Supp. 3d at 1194.  Furthermore, "[t]he Unruh claim and the
25  federal claim arise from the same nucleus of operating facts, have the same witnesses, the same
26  evidence, and the same parties."  (Doc. 37 at 17); *see also Schoors*, 2017 WL 1807954 at *4 (claims
27  under the Unruh Act and ADA "involve identical alleged facts, witnesses, and evidence"). As this
28  Court previously observed, accepting Defendants' argument that difference in remedies mandates a

finding that the state claim predominates "would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [in an ADA case]." *Johnson v. Barlow*, 2007 WL 1723617 at *3 (E.D. Cal. June 9, 2007). Thus, the Court finds Defendants fail to establish the Court should decline supplemental jurisdiction on this basis.

### 3.  Whether novel or complex issues are raised

Defendants assert, "Courts have long recognized that claims brought pursuant to the Unruh Civil Rights Act raise novel and complex issues of state law, providing another basis for this Court to decline supplemental jurisdiction."  (Doc. 30-1 at 12) According to Defendants, "[i]t is well-settled under California law that there is a conflict with regard to the manner in which damages are calculated" under the Unruh Act.  (*Id.*)  In addition, Defendants assert "the passage of Senate Bill 1186 in 2012 presents … novel issues of state law."  (*Id.* at 13)

#### a.  Damages calculation

The Unruh Act provides in relevant part that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 [] shall also constitute a violation of [the Unruh] Act." Cal. Civ. Code § 51(f). The Unruh Act generally provides for a minimum of $4,000 in statutory damages for each offense. *See* Cal. Civ. Code § 52.  Defendants maintain the provision of damages "for each and every offense" under the Unruh Act is "not well-defined," and "two district courts have come to conflicting conclusions when dealing with this language."  (Doc. 30-1 at 12) Defendants note that the Southern District permitted recovery for daily damages, while the Northern District determined daily damages were not permitted.  (*Id., comparing Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047 (S.D. Cal. 1998) *with Doran v. Embassy Suites Hotel*, 2002 WL 196166 at *4-5 (N.D. Cal. Aug. 26, 2002)).

Plaintiff notes that his "Unruh claim is for a single statutory penalty of $4,000 against both the Wons and GIJ Enterprises, Inc." (Doc. 37 at 18)  Because Plaintiff does not seek damages for repeated visits to Havana House Smoke Shop, the issue identified by Defendants is irrelevant and does not support a conclusion that the Court should decline supplemental jurisdiction.  *See Moore*, 85 F.Supp. 3d at 1193 (the issue was "irrelevant to the case at had because Plaintiff does not seek to stack claims across multiple visits").

///

13

b.      *Senate Bill 1186*

According to Defendants, "the passage of Senate Bill 1186 in 2012 presents additional novel issues of state law," as "this law codified new procedural requirements for disability discrimination lawsuits, including pre-litigation demands for money and the veracity of complaints." (Doc. 30-1 at 13) Defendants observe the bill "codified new procedural requirements for disability discrimination lawsuits, including pre-litigation demands for money and the veracity of complaints." (*Id.*)

The amendments to Cal. Code Civ. Proc. § 425.50 require a plaintiff to identify "[t]he way in which the barrier denied the individual full and equal use or access, or in which it deterred the individual on each particular occasion" and the specific date "on which the encountered the specific access barrier." Cal. Code Civ. Proc. § 425.50(a)) In addition, California law requires a complaint to be verified by the plaintiff, and "[a] complaint filed without verification shall be subject to a motion to strike." *Id.* § 425.50(b)) Defendants argue "Plaintiff's complaint is deficient under § 425.50 in the following ways: (1) Plaintiff's complaint is not verified; (2) Plaintiff failed to specify the date []he allegedly encountered barriers; [and] (3) Plaintiff failed to state the manner in which the alleged condition denied [him] access on a particular occasion." (*Id.*) According to Defendants, the Court should not permit "a plaintiff to litigate the only remaining claims in this forum, which are state law claims, while avoiding the requirements imposed on the litigating of those very state claims in state court." (Doc. 30-1 at 14)

However, Plaintiff's Unruh Act claim is *not* the only claim remaining at this juncture and the Defendant has not filed a motion to strike. Pleadings may be amended even at the summary judgment stage. Had the defendant wished to test the pleading, rather that the merits, there was a procedure for doing so. In any event, the Court does not find that, at this juncture, the defense has demonstrated that supplemental jurisdiction should be denied.

4.      Other compelling reasons

Defendants contend the "state court provides a more efficient forum for Plaintiff's state law claim." (Doc. 30-1 at 15, emphasis omitted) However, the Unruh Act provides that a violation under the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f). If Plaintiff establishes a claim for a violation of the ADA, he also establishes a violation of the Unruh Act. *See id.* Consequently, "[t]he

state and federal claims are so intertwined that it makes little sense to decline supplemental jurisdiction." *Moore*, 85 F.Supp. 3d at 1194.  Declining supplemental jurisdiction "would create the danger of multiple suits," an increase in litigation costs for the parties, and "wasted judicial resources." *Id.*  Thus, contrary to Plaintiff's assertion, it would be more efficient for Plaintiff's Unruh Act claim to remain in the federal court.

**V.      Conclusion and Order**

Defendants fail to present admissible evidence to establish that Plaintiff's claim for injunctive relief under the ADA is moot.  In addition, the Court retains supplemental jurisdiction over Plaintiff's claim under California's Unruh Act.

Based upon the foregoing, the Court **ORDERS**: Defendants' motion for partial summary judgment and request for the Court to decline jurisdiction (Doc. 45) is **DENIED**.

IT IS SO ORDERED.

Dated:   __**December 14, 2020**__              _____**/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE

15